DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, William Leroy Pinkelton, Jr., appeals from his conviction and sentence in the Lucas County Court of Common Pleas for burglary, in violation of R.C. 2911.12(A)(2) and (C), a felony of the second degree; receiving stolen property, in violation of R.C. 2913.51, a felony of the fourth degree; and failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a *Page 2 
felony of the third degree. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellant's conviction was based on a series of events that took place during the early morning hours of September 20, 2006. Evidence adduced at trial demonstrated the following concerning those events.
 {¶ 3} At approximately 3:15 a.m., victim Michael H. Scott returned to his home at 5429 Nebraska Avenue, Toledo, Ohio, and parked his vehicle in the driveway. He went to bed at approximately 4:00 a.m. Before approximately 7:15 a.m., Scott was awoken by his girlfriend and informed that his laptop computer and his 2006 Jeep Commander were missing. Scott looked around the house and discovered that in addition to the laptop and vehicle, other items were missing from the household. Among those items were the keys to the Jeep that had been sitting on the counter. Scott immediately called 911 to report that his house had been broken into and his car was stolen.
 {¶ 4} Soon after that call was placed, officers from the Toledo Police Department began to arrive on the scene. During the investigation, detectives discovered and photographed shoe prints that were in the dirt on the side and at the rear of the house.
 {¶ 5} At approximately 5:00 a.m., Officer Robert Kish of the Sylvania Township Police Department saw a Jeep run a red light at the corner of I-23 and Central Avenue, in Sylvania Township, Ohio. Kish, who was in a marked police vehicle, pulled up behind the Jeep and activated his lights. When the Jeep failed to stop, Kish turned on his siren and called for assistance. A chase ensued eastbound on Central Avenue, with Kish and *Page 3 
the driver of the Jeep reaching speeds of approximately 90 m.p.h. They proceeded out of Sylvania Township and into Ottawa Hills, Ohio. At Indian Road, the driver of the Jeep made a hard right, sending the vehicle over a median. One of the Jeep's tires blew, causing the vehicle to come to an abrupt stop.
 {¶ 6} The driver of the Jeep jumped out of the car. Kish noticed that he had dark hair and was wearing a gray sweater, dark-colored pants, and gray tennis shoes. Kish called out this description on the police radio, then exited his car and began to chase the driver into a wooded area, where he soon lost sight of him. Other units arrived on the scene to assist in the search. Less than an hour later, Detective Jamey Harmon of the Sylvania Township Police Department found appellant in the backyard of a residence, lying face-down in a bed of decorative grass. Kish identified appellant as the driver he had seen run from the Jeep.
 {¶ 7} The Jeep was determined to belong to Scott. Inside the vehicle were various items including Scott's missing laptop and car keys, a briefcase, a set of golf clubs, and a bicycle. Scott later identified everything in the car as his, except the bicycle. Kish testified that when he discovered the bicycle, soon after the driver of the Jeep had run from the vehicle, he noticed that it had wet tires, "like somebody had just been riding it."
 {¶ 8} Appellant, after being taken into custody by the Sylvania Township Police, was taken to St. Vincent's Hospital, in Toledo, for treatment of cuts on his hands. While he was sitting, in handcuffs, on a gurney in the emergency room, he was approached by *Page 4 
Toledo Police Detective Brian Lewandowski. Lewandowski asked appellant if he could take a look at the bottom of his shoes. Appellant lifted his feet up. Lewandowski looked at the bottom of the shoes and noted that the treads of the shoes appeared to match the prints at the burglary scene. When Lewandowski told appellant he was going to take the shoes, appellant told him to go ahead and take them.
 {¶ 9} On September 28, 2006, appellant was charged, in common pleas case No. CR-200603169, with one count of burglary, in connection with the incident at the Scott house, and one count of receiving stolen property, in connection with his possession of Scott's 2006 Jeep Commander. On November 1, 2006, appellant filed a motion to suppress evidence concerning the shoes. It was appellant's contention that the shoes were obtained in violation of his constitutional rights, as a result of an unreasonable search and seizure.
 {¶ 10} On December 8, 2006, the trial court held a hearing on the motion to suppress. Days later, the trial court ordered that the case be consolidated with common pleas case No. CR-200603416. As a result of this consolidation, the following counts were added: one for receiving stolen property, in connection with appellant's possession of Scott's 2006 Jeep Commander, and one for failure to comply with an order or signal of a police officer, in connection with appellant's flight from the Sylvania Township police.[1] *Page 5 
 {¶ 11} In a judgment entry file stamped December 28, 2006, the trial court denied appellant's motion to suppress.
 {¶ 12} The matter proceeded to trial before a jury, beginning on March 20, 2007 and concluding on March 22, 2007. At trial, photographs of appellant's shoe, of foam impressions from the shoe, and of the footprints left in the mud outside the Scott house were all entered into evidence.
 {¶ 13} Following trial, appellant was found guilty of all of the charges. The trial court sentenced him to serve seven years on the burglary charge, 17 months on the charge of receiving stolen property, and four years on the charge of failure to comply. The sentences were ordered to be served consecutively, for a total sentence of 12 years and five months.
 {¶ 14} Appellant timely appealed, raising the following assignments of error:
 {¶ 15} I. "MOTION TO SUPRRESS EVIDENCE WAS IMPROPERLY DENIED."
 {¶ 16} II. "PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS."
 {¶ 17} III. "OVERRULING DEFENDANT'S OBJECTION TO PROSECUTOR'S UNSUPPORTED OPINION WAS AN ABUSE OF DISCRETION BY THE TRIAL COURT."
 {¶ 18} IV. "INEFFECTIVE ASSISTANCE OF COUNSEL." *Page 6 
 {¶ 19} V. "POST STATE V. FOSTER VIOLATION OF THE SEPARATION OF POWERS."
 {¶ 20} Appellant argues in his first assignment of error that the trial court improperly denied the motion to suppress evidence concerning his shoes.
 {¶ 21} During a suppression hearing, the trial court functions as the trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. See State v. Mills (1992),62 Ohio St.3d 357, 366. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Harris (1994), 98 Ohio App.3d 543, 546. After accepting the trial court's properly supported facts, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been satisfied. State v. Hobbs, 8th Dist. No. 85889,2005-Ohio-3856, ¶ 8.
 {¶ 22} In this case, the facts are not in dispute. Therefore, we move directly to consideration of whether the trial court's denial of the motion to suppress was proper as a matter of law.
 {¶ 23} The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. "[Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347, 357. *Page 7 
One of those exceptions is the search incident to a lawful arrest.State v. Jones (1996), 112 Ohio App.3d 206, 215.
 {¶ 24} A search incident to arrest permits an officer to "conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." Id., citing United States v. Robinson (1973), 414 U.S. 218.
 {¶ 25} The constitutional authority for conducting a search incident to arrest has been explained by the United States Supreme Court, inUnited States v. Robinson, supra, as follows:
 {¶ 26} "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a `reasonable' search under that Amendment." Id., at 235.
 {¶ 27} That officers conducting a search incident to arrest possess broad search powers is indicated by the United States Supreme Court, inChimel v. California (1969), 395 U.S. 752, wherein it is stated:
 {¶ 28} "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in *Page 8 
order to resist arrest or effect his escape. * * * In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." Id., at 762-763.
 {¶ 29} Once a defendant is lawfully in custody, his clothing may lawfully be searched and seized without a warrant even if a substantial period of time has elapsed between the arrest and the taking of the property for use as evidence. See United States v. Edwards (1974),415 U.S. 800.
 {¶ 30} In the instant case, there can be no question but that the search in this case was incident to appellant's lawful arrest.[2]
Because appellant was under arrest, the police had the right to conduct a full search of his person, including his shoes. See Chimel, supra; see, also, State v. Hobbs, supra, at ¶ 13 (stating that police had right to conduct search of defendant's shoes pursuant to his arrest). That the search occurred in the hospital, soon after his arrest, rather than at the exact time and place of his arrest, is of no *Page 9 
consequence in this analysis and, thus, does nothing to alter our conclusion. See United States v. Edwards, supra.
 {¶ 31} Because the search in this case was reasonable and not in violation of the Fourth Amendment or the Ohio Constitution, appellant's first assignment of error is found not well-taken.
 {¶ 32} Appellant's second and third assignments of error involve overlapping issues and, therefore, will be considered together. Appellant argues in his second assignment of error that certain of the state's remarks during closing arguments were improper and constituted misconduct. In his third assignment of error, he argues that the trial court, in overruling defense counsel's objection to those remarks, abused its discretion.
 {¶ 33} The statements by the prosecutor to which appellant objects are as follows:
 {¶ 34} "[N]otice in the inventory the bike was never identified. It had mud on it. Take a look at it. You want to know why? It's [appellant's] bike, he rode it up there."
 {¶ 35} According to appellant, these statements were unsupported by the evidence and improperly implied that the bicycle was owned by appellant and was at the scene of the crime.
 {¶ 36} To evaluate a claim of prosecutor misconduct during closing argument, we determine whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14. Of paramount importance is the fairness of the trial, and not the culpability of the state; *Page 10 
and when the alleged misconduct occurs during closing argument, we examine the closing argument as a whole. State v. Paul, 8th Dist. No. 79596, 2002-Ohio-591. In conducting this analysis, we are mindful that both the defense and the prosecution are granted wide latitude when arguing what the evidence has shown and what reasonable inferences may be drawn therefrom. State v. Tumbleson (1995), 105 Ohio App.3d 693, 699.
 {¶ 37} In the instant case, Officer Kish testified that after the foot pursuit of the driver had begun he returned to the crashed vehicle, looked through it, and found a bicycle whose tires were wet, "like somebody had just been riding it." Scott, the owner of the home and stolen vehicle testified that he did not recognize the bicycle. Kish's search of the Jeep occurred within, at most, one hour of the Jeep's disappearance from Scott's driveway.
 {¶ 38} Together these facts lead to a reasonable and logical inference that appellant was in possession of the bicycle when he took Scott's Jeep. Thus, we cannot say that the prosecutor's remarks were improper, or that they prejudicially affected the rights of appellant. Likewise, we do not find that the trial court abused its discretion when it overruled defense counsel's objection to those remarks. Accordingly, appellant's second and third assignments of error are found not well-taken.
 {¶ 39} In his fourth assignment of error, appellant states that his trial counsel rendered ineffective assistance. Specifically, he states, in a one-sentence argument, that his attorney "failed to raise a Blakely objection (Blakely v. Washington (2004), 542 U.S. 296) *Page 11 
at sentencing, thus waiving the defendant's rights as held in State v.Payne (2007), 114 Ohio St.3d 502."
 {¶ 40} Appellant's argument seems to be that defense counsel was ineffective for failing to object to appellant's sentence based on the Ohio Supreme Court's decision in State v. Foster (2006),109 Ohio St.3d 1, 2006-Ohio-856. However, Payne does not apply to this case, and counsel did not render ineffective assistance, because, unlike the defendant in Payne, appellant was sentenced after the Foster decision was rendered. In Payne, the court held that because Blakely was announced prior to the defendant's plea and sentence, the defendant, in failing to make a Blakely objection, forfeited the issue for appellate purposes. Id.
 {¶ 41} Beyond the inapplicability of Payne to the facts of this case, we note that there is nothing in the record to establish that the trial court relied upon any sentencing statute determined by Foster to be unconstitutional. Appellant's fourth assignment of error clearly has no merit, and is therefore found not well-taken.
 {¶ 42} Appellant's fifth assignment of error states in its entirety:
 {¶ 43} "The Separation of Powers as established by our National and State constitution is fundamental to our system of governance. The state judicial branch does not have legislative authority and can not take the place of the legislative branch. The Ohio Supreme Court's decision inState v. Foster (2006), 109 Ohio St.3d 1, is not compatible with the controlling precedent of the United States Supreme Court of Ohio Statutes. Because of this, [appellant's] case should be reversed." *Page 12 
 {¶ 44} Presumably, this assignment of error is intended to argue that the Ohio Supreme Court's decision in Foster violates the separation of powers doctrine under both the Ohio and United States constitutions. However, it has already been held that the Foster decision does not violate the separation of powers doctrine. State v. Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011, ¶ 37-38; State v. Harvey, 6th Dist. No. WD-07-006, 2008-Ohio-73, ¶ 7. Accordingly, appellant's fifth assignment of error is found not well-taken.
 {¶ 45} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] At the request of the state of Ohio, a nolle prosequi was eventually ordered entered as to the second, apparently redundant, count of receiving stolen property.
[2] We note that there is no dispute that officers had probable cause to arrest appellant after he eluded police and ran from the Jeep. To the extent that appellant argues that his extraterritorial detention was in violation of Ohio statutory law, we reject that argument on the following grounds: (1) the arrest was in conformity with R.C.2935.03(D), which permits a municipal officer to pursue, arrest, and detain a person until a warrant can be obtained where, as here: (a) the pursuit takes place without unreasonable delay after the offense is committed; (b) the pursuit is initiated within the limits of the political subdivision; and (c) the offense involved is a felony; and (2) even if the arresting officer had violated R.C. 2935.03(d) (although we specifically find that he did not), such would not form a basis for suppressing the evidence at issue in the instant case, because the exclusionary rule is only used to remedy violations of constitutional rights and not violations of state statutes. See State v. Paul, 8th Dist. No. 79596, 2002-Ohio-591. *Page 1