The STATE of Ohio

v.

ANDERSON.

2010-Ohio-3989.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2009 CR 0783.

Decided April 26, 2010.

36

38

[redacted]

Donald White, Clermont County Prosecuting Attorney, and William J. Ferris, Assistant Prosecuting Attorney, for plaintiff.

Daniel B. Startsman III, for defendant.

HADDAD, Judge.

{¶ 1} This matter came before the court on February 22, 2010, pursuant to a motion to suppress filed by the defendant, Robert L. Anderson. Upon hearing oral arguments on the motion, the court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} The defendant was indicted on one count of aggravated possession of drugs, in violation of R.C. 2925.11(A), on October 28, 2009. It is alleged that on or about October 19, 2009, the defendant knowingly obtained, possessed, or used a controlled substance, and the drug involved in the violation was a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, LSD, heroin, and hashish. The drug allegedly involved was methamphetamine, a schedule II drug. Specifically, it is alleged that the defendant possessed 0.23 grams of methamphetamine in a front pocket of the pants he was wearing.[1]

{¶ 3} The following facts are based upon the uncontroverted testimony of Agent Mark Sorbello of the Clermont County Narcotics Unit and Corporal Ron Robinson of the Goshen Township Police Department. On October 19, 2009, four

---

1. See bill of particular filed November 25, 2009.

officers went to the home of Lynda Fields and Randall Hanselman, located at 6685 Oakland Road, Loveland, Clermont County, Ohio, in order to execute a warrant for their arrest. Once they arrived, Agent Sorbello and Agent DePuccio went around to the back of the house while Corporal Robinson and Deputy Gebhardt went to the front door. Gebhardt and Robinson were invited into the home. There is some discrepancy in the testimony as to whether Hanselman was home at the time or whether he came in later. However, both officers testified that Fields was home and was seated in the living area. The defendant was at the dining room table surrounded by drugs and drug paraphernalia. Robinson testified that he saw the defendant walk to the trash can, but could not see whether anything was thrown away. Another male was at the scene with a child, but, after the officers performed a consent search of that person's vehicle and of his person, the male and the child were released.

{¶ 4} Robinson stated that he and Gebhardt were explaining the warrant to Fields and Hanselman when Agent Sorbello and Agent DePuccio came in the back. The defendant was asked to get up from the table to be checked for weapons, but he kept lunging for the table. The defendant was then cuffed to protect the evidence, and a pat-down search for weapons was performed. He was not placed under arrest at this time. Robinson testified that the defendant kept trying to put his hands into his front pockets, so a second pat-down search for weapons was performed. No weapons were discovered during either pat-down. At some point during the evening, the defendant was permitted to go onto the front porch so that he could smoke.

{¶ 5} Sorbello testified that the officers arrived on scene at approximately 8:30 p.m. Once the defendant was discovered at the table with the drugs and drug paraphernalia, Sorbello executed an affidavit for a search warrant. Due to the late hour, Sorbello took the affidavit to the home of a Clermont County Municipal Court judge, and the warrant was signed at approximately 11:00 p.m. Sorbello then arrived back at the scene sometime between 11:30 p.m. and 12:00 a.m. The warrant was executed and was time-stamped back in at approximately 1:00 a.m. on October 20, 2009. The officers remained at the scene until approximately 5:00 a.m. for clean-up purposes. Notably, the search warrant did not permit a search of the defendant's person or of any other person located at the scene. A search of the scene resulted in the discovery of hundreds of small baggies, cut straws, and foil. Based upon the officers' training and experience, it was determined that the items discovered were consistent with illegal drug abuse.

{¶ 6} After the warrant was executed, the defendant was placed under arrest. Once the defendant was formally placed under arrest, Robinson performed a more thorough search of the defendant's person and discovered two bags of white powder, which were later determined to be methamphetamine. The defendant

was then turned over to Gebhardt, and the defendant was placed into the patrol car for transport.

{¶ 7} The defendant filed a motion to suppress on December 23, 2009. The defendant argues that all evidence resulting from the warrantless seizure and search of the defendant should be suppressed since both the seizure and search were unlawful and unreasonable under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. The defendant contends that the officers unreasonably extended his detention and that the warrantless seizure of his person extended beyond the time necessary for the officers to investigate any initial reasonable suspicion based upon specific, articulable facts. Further, the defendant asserts that suppression of the evidence obtained during the warrantless search of his person is appropriate since there was no probable cause to support the search and since the search warrant issued for 6685 Oakland Road, Loveland, Ohio, on October 19, 2009, did not authorize the search. In summary, the following are points of contention in the defendant's motion to suppress: (1) the initial detention while the arrest warrant against another person was executed, (2) the subsequent detention while officers were waiting on the search warrant, and (3) the search of the defendant's person, since he was not named in the search warrant.

## LEGAL ANALYSIS

{¶ 8} The defendant's first argument in his motion to suppress is that the officers unreasonably extended the warrantless seizure of his person beyond the time necessary for them to investigate any initial reasonable suspicion based upon specific, articulable facts. This broad argument encompasses both the time that it took to execute the arrest warrant on Fields and Hanselman and the time that it took to obtain a search warrant for the residence.

{¶ 9} The court first notes that the defendant is not arguing that the officers lacked reasonable suspicion based upon specific, articulable facts. Instead, the argument made is that the amount of time the defendant was detained during the investigation was unreasonable.

{¶ 10} "A Terry stop is an investigatory detention of limited duration and purpose and can last only as long as it takes the police officer to confirm or dispel his suspicions." *State v. Peacock,* Lake App. No. 2002–L–115, 2003-Ohio-6772, 2003 WL 22952755, ¶ 15, citing *State v. Taylor* (1995), 106 Ohio App.3d 741, 748, 667 N.E.2d 60. "During a Terry stop, an officer may perform a 'pat down' search for weapons. The purpose of this limited search is to allow an officer to pursue his or her investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime." *State v.*

*Cooper*, Cuyahoga App. No. 82588, 2003-Ohio-6038, 2003 WL 22671593, ¶ 11. When performing a Terry pat-down search for weapons, the officers may "seize nonthreatening contraband when its incriminating nature is 'immediately apparent' to the searching officer through the sense of touch." Id. " '[H]andcuffing and other means of detention are reasonable as long as the restraint was temporary, lasted no longer than was necessary to effectuate the purpose of the stop, and the methods employed were the least intrusive means reasonably available to verify the officers' suspicions in a short period of time." *State v. Hopper*, Cuyahoga App. Nos. 91269 and 91327, 2009-Ohio-2711, 2009 WL 1623105, ¶ 22, quoting *State v. Hubbard*, Cuyahoga App. No. 83385, 2004-Ohio-4498, 2004 WL 1902581, ¶ 17. " 'Handcuffing and other means of detention may be used to prevent flight.' " Id.

{¶ 11} The officers in this case had a reasonable basis for believing that the defendant might be armed. He was suspected of committing a drug offense, a crime that frequently involves armed participants. Further, the officers saw him reaching toward the pocket of his pants. The defendant was also less than compliant as he attempted to lunge toward the dining room table, even when the officers attempted to remove him from that area. This evidence indicates to the court that the use of restraints was necessary to protect the officers' safety, as well as to protect the evidence in this case.

{¶ 12} As to the length of time that the defendant was detained, Ohio courts have held that "if an officer, during the initial detention of a motorist, ascertains additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may further detain the motorist and conduct a more in-depth investigation." *State v. Williams*, Clinton App. No. CA2009–08–014, 2010-Ohio-1523, 2010 WL 1274229, ¶ 18.[2] The detention may last for a period of time reasonably necessary to confirm or dispel suspicions of criminal activity. Id. However, the detention must end once the officer is satisfied that no criminal activity has occurred. Id. In determining the reasonableness, courts must look at the totality of the circumstances. Id. at ¶ 19.

{¶ 13} In the case at bar, the continued detention of the defendant was based upon specific, articulable facts giving rise to a suspicion of some separate illegal activity that warranted an extension of the detention in order to implement a more in-depth investigation. Specifically, the officers personally witnessed the defendant sitting at a dining room table with what appeared to be drugs and drug paraphernalia within his control. The officers then detained the defendant for a period of time in order to obtain a search warrant for the property. The officers

---

2. The court is mindful that unlike in *Williams*, this case does not involve a motorist; however, the standard set forth is applicable despite that difference.

were concerned that the defendant and the resident of the home were involved in the manufacture of methamphetamine, since a mason jar was found in the trash can that the defendant was observed near at the time the officers arrived on scene. This is a separate illegal activity from the mere possession of drugs and drug paraphernalia. Agent Sorbello testified that they arrived at the home at approximately 8:30 p.m. and that the judge signed the search warrant at 11:00 p.m. He then arrived back at the scene with the warrant between 11:30 p.m. and 12:00 a.m.

{¶ 14} The court finds that based upon the totality of the circumstances of this case, the three hours within which it took the officers to arrest Fields and Hanselman, to perform two pat-down searches of the defendant's person, to execute an affidavit for a search warrant, to go to the home of a judge to have the warrant signed, and to return and execute the warrant were reasonable given the urgent nature of the officers' suspicions. Further, in an effort to alleviate the intrusive nature of the restraints, the officers testified that they allowed the defendant to smoke while they waited for the search warrant. Additionally, there is some evidence in the record to indicate that the defendant was not handcuffed the entire time. Given the nature of the suspected activity, the court finds that the officers conducted their investigation within a reasonable period of time and that they took steps to make the defendant as comfortable as possible during the time he was detained. Therefore, while the court recognizes that three hours is a significant amount of time, the court finds that based upon the totality of the circumstances, that time was reasonable given the nature of the suspected criminal activity.

{¶ 15} Furthermore, the court finds that in addition to reasonable and articulable suspicion under *Terry*, the officers had probable cause to arrest and detain the defendant upon first observing him at the dining room table. An officer has probable cause to arrest when the officer has facts and circumstances within his or her knowledge, derived from a reasonably trustworthy source, to warrant a prudent person in believing that the suspect has committed or was committing an offense. *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. See also *State v. Timson* (1974), 38 Ohio St.2d 122, 127, 67 O.O.2d 140, 311 N.E.2d 16, citing *Brinegar v. United States* (1949), 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879. In this case, the facts available to the officers included the defendant sitting at a table with what appeared to be drugs and drug paraphernalia within his immediate control. Further, according to the affidavit of Agent Sorbello, Agent DePuccio observed a mason jar and cut straws in the garbage can.[3] The testimony of Corporal Robinson was that the defendant

---

3. See Stipulation for Admission of Exhibit, filed April 13, 2010, and state's Exhibit 1.

was seen walking to the trash can during the time that Fields and Hanselman were being arrested. Additionally, the defendant made several efforts to lunge at the table when the officers requested that he move from that area. The court finds that the defendant's actions would warrant a prudent person to believe that the defendant had committed a drug offense. Therefore, the court finds that the *Terry*-stop analysis is not necessary, since the officers had probable cause to arrest and detain the defendant at the time they arrived at the home and observed the defendant's actions. Therefore, the court finds that even if the detention were not reasonable under *Terry*, it could be argued that the defendant was actually under lawful arrest at the time he was handcuffed and a *Terry* analysis would be inapplicable.

{¶ 16} Based upon the foregoing, the court finds that the state has met its burden of proving that the defendant's detention while the initial warrant against Fields and Hanselman was executed and his detention while the officers obtained a search warrant for the property were reasonable, given the totality of the circumstances. Further, it could be argued that a *Terry* analysis is inapplicable, since the officers had probable cause to arrest the defendant when they first observed him with the drugs in his immediate control. Therefore, the first and second arguments contained in the defendant's motion to suppress are not well taken and are hereby denied.

{¶ 17} The defendant next argues that the evidence obtained during the warrantless search of his person should be excluded since there was no probable cause to support the search and since the search warrant issued for 6685 Oakland Road, Loveland, Ohio, did not authorize the search. "The burden of initially establishing whether a search or seizure was authorized by a warrant is on the party challenging the legality of the search or seizure. * * * Once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search. * * * This flows from the presumption that searches conducted outside the judicial process, without prior approval by judge or magistrate, are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *State v. Gilbert*, 184 Ohio App.3d 642, 2009-Ohio-5528, 921 N.E.2d 1126, ¶ 20, quoting *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889. In this case, it is undisputed that the search warrant did not permit a search of the defendant's person; thus the burden of persuasion is on the prosecution to show the validity of the search.[4]

---

4. Testimony of Agent Sorbello; Stipulation for Admission of Exhibit, filed April 13, 2010, and state's Exhibit 1.

{¶ 18} The court recognizes that the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect persons against unreasonable searches and seizures. Any search conducted without approval through a valid search warrant is per se unreasonable, unless one of the exceptions to a warrantless search applies. One of those exceptions is the search incident to a lawful arrest. *State v. Jones* (1996), 112 Ohio App.3d 206, 215, 678 N.E.2d 285; *State v. Gagaris*, Butler App. No. CA2007–06–142, 2008-Ohio-5418, 2008 WL 4616568, ¶ 16; *Gilbert* at ¶ 24. "When conducting a search incident to arrest, police are not limited to a *Terry* pat-down for weapons, but may conduct a full search of the arrestee's person for contraband or evidence of a crime." *Gagaris*, ¶ 16. See also *State v. Pinkelton*, Lucas App. No. L–07–1170, 2008-Ohio-980, 2008 WL 612785, ¶ 24. A search incident to an arrest "allows officers to conduct a search that includes an arrestee's person and the area within the arrestee's immediate control." *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 11.

{¶ 19} The search-incident-to-arrest exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." Id.; *Gilbert* at ¶ 24. " 'A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.' " *Pinkelton* at ¶ 26, quoting *United States v. Robinson* (1973), 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427. The search, however, need not be conducted at the exact moment of arrest, but instead may be conducted later, when the accused arrives at the place of detention; nevertheless, the exception no longer applies when the interests in officer safety and evidence preservation are minimal. *Smith* at ¶ 12. "Further, the actual arrest need not precede the search as long as the fruits of the search are not used to support probable cause for the arrest." *Jones* at 215, 678 N.E.2d 285. See also *Gagaris* at ¶ 16.

{¶ 20} In order for the court to determine that the search of the defendant's person falls within the search-incident-to-arrest exception to the search-warrant requirement, the court must first determine whether the defendant was lawfully arrested at the time the search was performed. In making this determination, the court must ascertain whether the officers had probable cause to arrest the defendant. Probable cause has previously been discussed, and the court finds that the same analysis applies.

{¶ 21} Both Agent Sorbello and Corporal Robinson testified that when they arrived at the home of Fields and Hanselman, the defendant was observed at the dining room table surrounded by what appeared to be drugs and drug paraphernalia. During the time that Robinson was executing the arrest warrant on Fields and Hanselman, the defendant went to the trash can. Sorbello testified that he observed what he thought, based upon his training and experience as a narcotics officer, was heroin on the table; however, it did not test positive for heroin. Robinson testified that he observed hundreds of small baggies that indicated that drugs were involved, as well as cut straws and foil. Based upon his training and experience, Robinson testified, these items were consistent with illegal drug abuse. Both officers testified that after the defendant was asked to step away from the table in order for them to perform a *Terry* pat-down search, they observed the defendant lunging for the table and trying to place his hands into his pockets. In order to preserve the evidence, the defendant was placed in handcuffs. After the search warrant was obtained and executed, the officers made the decision to arrest the defendant.

{¶ 22} The court finds that the officers had probable cause to arrest the defendant based upon their personal observations of the drugs and drug paraphernalia in the defendant's immediate control. The court finds that based upon their training and experience in the area of narcotics investigation, the officers were reasonable in believing the defendant had committed an offense. Therefore, the court finds that the officers had probable cause to arrest the defendant for possession of drugs. Since the officers had probable cause to arrest the defendant, the court finds that the defendant's arrest was lawful; thus, the search-incident-to-an-arrest exception allowed the officers to conduct a search of the defendant's person. Therefore, the court finds that the search of the defendant's person and the subsequent discovery of the methamphetamine were lawful, despite the fact that the defendant's person was not expressly included in the search warrant. Based upon these findings, the court hereby denies the defendant's motion to suppress as it relates to the defendant's third argument— that the discovery of the methamphetamine in the defendant's pocket was unlawful.

## CONCLUSION

{¶ 23} Based upon the foregoing analysis, and the competent, credible evidence before the court, the defendant's motion to dismiss is not well taken. Therefore, the court hereby denies the defendant's motion to suppress in its entirety.

{¶ 24} This case is set for pretrial on May 10, 2010 at 9:00 a.m.

{¶ 25} It is ordered that this decision shall serve as the judgment entry in this matter.

Judgment accordingly.