[Cite as *State v. Dotson*, 2016-Ohio-8085.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

    Appellee

v.

Cortez Antoine Dotson

    Appellant

Court of Appeals No. WD-15-060

Trial Court No. 2014CR0369

**<u>DECISION AND JUDGMENT</u>**

Decided:  December 9, 2016

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney,
Gwen Howe-Gebers and David T. Harold, Assistant
Prosecuting Attorneys, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendant-appellant, Cortez A. Dotson, appeals the October 19, 2015 judgment of the Wood County Court of Common Pleas, convicting him of felonious assault and aggravated robbery.[1]  For the reasons that follow, we affirm the trial court's judgment.

---

[1] The judgment entry incorrectly states that Dotson was convicted of aggravated *burglary,* however, it cites the statute for aggravated robbery.  It is clear from the trial

## A. Background

{¶ 2} Just after midnight on August 3, 2014, police officers responded to a possible crime scene at the parking lot of the Wendy's restaurant off the Buck Road exit in Rossford, Wood County, Ohio. They found a man lying on the ground, bloody and unresponsive. Scattered around him were a bottle of cognac, a liquor store receipt, a Styrofoam cup, a crushed pack of cigarettes, dread locks that had been pulled from his scalp, earrings, a wristwatch, a wallet, a hotel room key, a lighter, and a cell phone. The victim was wearing jeans which had been pulled down, the pockets pulled inside out, and a white T-shirt, which first responders cut off. There was blood on his shirt and on his face and oozing from his mouth, ears, nose, and the corners of his eyes.

{¶ 3} The victim was ultimately identified as Edward Tiggs. He was transported to St. Vincent Medical Center, where he remained hospitalized for 20 days due to head injuries, in a coma for much of that time. He was discharged to a long-term care facility where he stayed for approximately two weeks. His sister, a registered nurse, now cares for him. He has short-term memory deficits and has been unable to maintain employment.

{¶ 4} Tiggs does not recall the details of his assault. He explained, however, that he had been living at the Days Inn in the Dayton, Ohio area, with his friends, Dwan Earl and Cortez Dotson. The three were temporarily working in that area. On August 2, 2014, Tiggs and Earl worked, but Dotson did not. Dotson picked up Tiggs and Earl from

transcript that Dotson's conviction was for aggravated *robbery*. This error should be corrected by a nunc pro tunc entry.

2.

work.  Tiggs had gotten paid that day.  He cashed his check and they went to an outlet mall where he bought two pairs of True Religion jeans.  They returned to their hotel room, and Tiggs hid what was left of his paycheck in various places—$300 in a suitcase and $500 in a bible.  He kept a $100 bill which he put in the pocket of his new jeans.  His purpose in hiding the money was not to conceal it from his friends, but to prevent hotel cleaning staff from stealing it.  Tiggs did not believe that Earl and Dotson were aware that he had hidden money in the room.

{¶ 5} Tiggs walked to Walmart and bought several items, and he also bought a bottle of cognac from a liquor store.  He again returned to the hotel room, showered and got dressed, and the three left for a trip to Toledo.

{¶ 6} Cortez drove his vehicle, Earl sat in the passenger seat, and Tiggs rode in the back seat.  Tiggs recalls that all three drank from the bottle of cognac that he had bought.  Tiggs remembers calling his mom and his brother.  He also remembers arguing with Earl about drug money Tiggs had owed to him for over ten years.  The last thing Tiggs recalls from that evening was arguing in a restaurant parking lot and getting punched twice from the side.  His next memory is of waking up in a nursing home.  He does not recall who hit him, but he recalls that he had been fighting with Earl.

{¶ 7} Tiggs' family lives in Wisconsin.  The detective assigned to the case, Todd Kitzler, was able to get a hold of them to notify them of Tiggs' beating by dialing numbers that were saved in Tiggs' cell phone.  The family told Detective Kitzler who Tiggs was with during the drive to Toledo.

3.

{¶ 8} Detective Kitzler spoke with Dotson. Dotson told him that Tiggs was being disrespectful so they pulled off the expressway and made him get out of the vehicle. Dotson said he did not know what happened to Tiggs, but he denied that Tiggs was injured when they left him. He insisted that Tiggs was fine, other than being drunk and belligerent, and he did not recall Tiggs taking anything with him.

{¶ 9} Detective Kitzler went to the Days Inn near Dayton to look for the vehicle. It was not there, but he spoke to the receptionist who confirmed that Earl, Dotson, and Tiggs were registered guests. On August 23, 2014, Kitzler located the vehicle that Dotson was driving that evening. It was searched pursuant to the consent of the owner of the vehicle, and it was processed by the Bureau of Criminal Investigations ("BCI"). No evidence pertinent to the crime was found, and there was no indication that the vehicle had been tampered with.

{¶ 10} Dotson was arrested and questioned on August 25, 2014, at the police station. He invoked his right to counsel. Before being transported to the jail, Detective Kitzler took photographs of scars on Dotson's hands and confiscated Dotson's shoes.

{¶ 11} Numerous items from the crime scene were submitted to and processed by BCI, including the Styrofoam cup, the cigarette pack, the lighter, the bottle of cognac, Tiggs' pants and shirt, and Dotson's shoes. BCI found no DNA from Tiggs or Dotson on the Styrofoam cup found at the scene. It determined that Tiggs' DNA was on the lighter, but Dotson's was not. DNA from Tiggs and an unknown source was on the mouth of the bottle of cognac. There was no blood on Dotson's shoes. There was a mixture of DNA

on the inside of Tiggs' pants pockets consistent with Tiggs' and Dotson's DNA, but there was no blood.

{¶ 12} Tiggs' T-shirt tested positive for blood and the blood was consistent with Tiggs', but not Dotson's. There was also a shoe print on Tiggs' white T-shirt. BCI collected imprints of the shoes of the first responders who were at the Buck Road Wendy's and used them for comparison purposes. The shoe print was not consistent with any of those submitted by first responders, but Dotson's shoes could not be eliminated as the source of the shoe print.

{¶ 13} Dotson was indicted on October 16, 2014, on charges of felonious assault, a violation of R.C. 2903.11(A)(1) and (D)(1)(a), and aggravated robbery, a violation of R.C. 2911.01(A)(3) and (C). Following a jury trial, he was convicted of both charges. He timely appealed and assigns the following errors for our review:

I

The trial court erred to the prejudice of Appellant by denying his motion to suppress the warrantless seizure of his shoes and photographs of his hands.

II

The trial court committed error to the prejudice of Appellant by imposing the costs of prosecution without consideration of Appellant's present or future ability to pay.

5.

III

The trial court erred to the prejudice of Appellant in denying his rule 29 motion.

IV

The jury's verdict was against the manifest weight of evidence presented at trial.

**B. Law and Analysis**

{¶ 14} In his first assignment of error, Dotson argues that the trial court erred when it denied his motion to suppress the photographs of his hands and the seizure of his shoes. In his second assignment of error, he contends that the trial court erred in imposing costs without considering his ability to pay. In his third assignment of error, he claims that the trial court erred in denying his motion for acquittal. And in his fourth assignment of error, he challenges the verdict as against the manifest weight of the evidence.

**1. The Motion to Suppress**

{¶ 15} Dotson filed a motion in the trial court seeking suppression of statements and evidence obtained after he invoked his right to counsel during questioning at the police station on August 25, 2014. The trial court granted his motion with respect to the statements he made after requesting counsel, but it denied the motion with respect to photographs taken of Dotson's hands and the confiscation of his shoes by Detective Kitzler. With respect to the photographs, the court held that "[g]iven that the Defendant

6.

was in custody when these photos were taken, there would be no reasonable expectation of privacy regarding the condition of the outside of the Defendant's hands." With respect to the confiscation of Dotson's shoes, the court, quoting our decision in *State v. Pinkelton*, 6th Dist. Lucas No. L-07-1170, 2008-Ohio-980, ¶ 30, held that "because the Defendant 'was under arrest, the police had the right to conduct a full search of his person, including his shoes.'"

{¶ 16} Appellate review of a motion to suppress is a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. On a motion to suppress, the trial court assumes the role of finder of fact and, as such, is in the best position to determine witness credibility and resolve factual disputes. *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we must accept the trial court's factual findings as true if supported by competent and credible evidence. *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 28 (6th Dist.). We then independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard. *State v. Jones-Bateman*, 6th Dist. Wood No. WD-11-074, 2013-Ohio-4739, ¶ 9, citing *State v. Claytor*, 85 Ohio App.3d 623, 626, 620 N.E.2d 906 (4th Dist.1993).

{¶ 17} "[A] search conducted without a warrant issued upon probable cause is *per se* unreasonable * * * subject only to a few specifically established and well-delineated exceptions." (Internal citations and quotations omitted.) *State v. Posey*, 40

7.

Ohio St.3d 420, 427, 534 N.E.2d 61 (1988). One such exception is a search incident to a lawful arrest. *State v. Bowman*, 6th Dist. Huron No. H-10-026, 2011-Ohio-4734, ¶ 12. "A search incident to arrest permits an officer to conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." (Internal citations and quotations omitted.) *Pinkelton* at ¶ 24.

{¶ 18} As the trial court recognized, we held in *Pinkleton* that because the appellant had been lawfully arrested, the police had a right to conduct a full search of his person, including his shoes. *Id.* at ¶ 30. We held similarly in *State v. Moody,* 6th Dist. Wood No. WD-77-3, 1977 Ohio App. LEXIS 9640, *10 (Aug. 19. 1977) (holding that watch and shoes were properly seized without a warrant pursuant to valid arrest). *See also State v. Hobbs*, 8th Dist. Cuyahoga No. 85889, 2005-Ohio-3856, ¶ 13 ("Since Hobbs was under arrest, the police had the right to conduct a full search of his person, which includes anything in his immediate control, including his shoes."); *State v. Moon*, 10th Dist. Franklin No. 75AP-649, 1976 Ohio App. LEXIS 8277, *2-3 (Apr. 6, 1976) (finding that use of appellant's tennis shoe as evidence was proper where probable cause existed for appellant's arrest); *State v. Larios*, 12th Dist. Preble No. CA2009-07-019, 2012-Ohio-4525, ¶ 14 (finding no error in denial of motion to suppress evidence resulting from warrantless search of appellant's shoes where there existed probable cause for arrest).

8.

{¶ 19} As for the photographs of Dotson's hands, the state urges that the plain view doctrine permitted Detective Kitzler to photograph the visible scars on Dotson's hands. It cites a number of cases from other jurisdictions in support of its position.

{¶ 20} We agree with the state that the detective properly photographed the visible scars on Dotson's hands under the plain view doctrine. Moreover, we find that the photographs were also proper in light of the fact that Dotson had been arrested and was in custody. *See, e.g., State v. Armstrong*, 2d Dist. Montgomery No. 19655, 2005-Ohio-432, ¶ 37 (rejecting appellant's position that photograph of his tattoo taken by police while he was in police custody, without his permission and without a warrant, was an unreasonable search and seizure); *State v. Doan*, 12th Dist. Clinton No. CA97-12-014, 2000 Ohio App. LEXIS 713, *40 (Feb. 28, 2000) ("[A] warrant was not required to take the photograph of appellant's tattoo because the photograph was a minor intrusion."); *State v. Thompson*, 2d Dist. Montgomery Case No. CA 5981, 1979 Ohio App. LEXIS 9766, *15 (Aug. 30, 1979) (finding that photograph obtained after defendant's arrest was properly submitted to jury).

{¶ 21} We find Dotson's first assignment of error not well-taken.

## 2. The Imposition of Costs

{¶ 22} In his second assignment of error, Dotson argues that the trial court erred in imposing the costs of prosecution without considering whether he had the present or future ability to pay those costs. At sentencing, Dotson was orally informed that he must

9.

pay the costs of the case. The judgment entry also provided that "Defendant is ordered to pay the costs of this prosecution."

{¶ 23} Under R.C. 2947.23, the trial court is required to assess the costs of prosecution in all criminal cases against all convicted defendants regardless of their financial status, and no hearing is required before ordering the payment of those costs. While Dotson appears to acknowledge this in his brief, he goes on to state that before imposing the costs of attorney fees, R.C. 2941.51(D) requires that a hearing must be conducted to determine whether he has, or may be expected to have, the ability to pay.

{¶ 24} Here, we find that the trial court imposed only the costs of prosecution and it was entitled to do so without conducting a hearing or making a finding that Dotson is or will be able to pay those costs. No other costs were imposed.

{¶ 25} Accordingly, we find Dotson's second assignment of error not well-taken.

### 3. The Motion for Acquittal

{¶ 26} In his third assignment of error, Dotson contends that the trial court erred in denying his motion for acquittal under Crim.R. 29 because the state failed to introduce evidence that Dotson had actually perpetrated the offense.

{¶ 27} We review a Crim.R. 29 motion for acquittal under the same standard used to review a sufficiency of the evidence claim. *State v. Hollstein*, 6th Dist. Lucas No. L-08-1184, 2009-Ohio-4771, ¶ 28. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant

10.

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 28} Here, the state presented evidence that the men in the vehicle were arguing about money, and it submitted photographs depicting scars on Dotson's hands. It also presented evidence that Tiggs was wearing a brand new pair of jeans and had stashed a $100 bill in his pocket. Dotson's DNA was found in Tiggs' pants pocket, the money was gone, and a shoe print consistent with the pattern on Dotson's shoe appeared on Tiggs' T-shirt, across the chest.

{¶ 29} Ohio courts have often recognized that proof of guilt may be made by circumstantial evidence. *State v. McFeeture*, 2015-Ohio-1814, 36 N.E.3d 689, ¶ 43-44 (8th Dist.). The Eighth District explained in *McFeeture*:

> Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind. Although it requires the drawing of inferences, circumstantial evidence and direct evidence inherently possess the same probative value. The United States Supreme Court has long noted that circumstantial evidence is not only sufficient, but

may also be more certain, satisfying, and persuasive than direct evidence. The Ohio Supreme Court has also instructed that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.

(Citations and quotations omitted.) We have expressly held that the "[i]dentity of the perpetrator of a crime can be proved by circumstantial evidence." *State v. Thompson*, 6th Dist. Lucas Nos. L-08-1208, L-09-1214, 2011-Ohio-5046, ¶ 71.

{¶ 30} Here we find that although circumstantial, the evidence presented by the state, if believed, supported its theory that Dotson perpetrated Tiggs' robbery and assault. We, therefore, find Dotson's third assignment of error not well-taken.

### 4. Manifest Weight of the Evidence

{¶ 31} In his fourth assignment of error, Dotson claims that the jury's verdict was against the manifest weight of the evidence. As in his third assignment of error, Dotson argues that the evidence against him was speculative. In support of his position, Dotson points out that no receipt was presented to establish that Tiggs' jeans were new, and given the close quarters that Tiggs, Earl, and Dotson lived in at the Days Inn, the fact that his DNA was found in the pocket was not dispositive. He also criticizes the state for failing to test Earl's DNA for comparison purposes. With respect to the vehicle, Dotson points out that police searched the vehicle that the trio drove to Toledo, but found nothing—including no blood—tending to implicate him in the offense. Finally, he

12.

contends that there was no testimony "definitively and conclusively" linking him to the shoes that caused the footprint, there was no blood on the shoes, and the testimony established only that he "could not be eliminated as a possible owner of the shoes."

{¶ 32} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 33} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. Additionally, "[t]he jury is free to accept or

reject evidence, to note ambiguities and inconsistencies in testimony—whether between witnesses or in the conflicting statements of a single witness—and to resolve or discount them accordingly." *State v. Barnhart*, 6th Dist. Huron No. H-10-005, 2011-Ohio-2693, ¶ 55.

{¶ 34} The jury had before it the evidence described in the foregoing section. We find that although circumstantial, these items of proof, together with the inferences they generate, were sufficient for the jury to conclude that Dotson perpetrated Tiggs' robbery and assault. *See Barnhart* at ¶ 53.

{¶ 35} **Conclusion**

{¶ 36} For the foregoing reasons, we find Dotson's assignments of error not well-taken and affirm the October 19, 2015 judgment of the Wood County Court of Common Pleas. As we observed in footnote one, however, the judgment entry incorrectly states that Dotson was convicted of aggravated *burglary* instead of aggravated *robbery*. We order the trial court to correct this discrepancy by entering a nunc pro tunc entry. Costs are assessed to Dotson under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

James D. Jensen, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE