[Cite as *State v. Haynes*, 2020-Ohio-1049.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

Appellee

v.

Samuel S. Haynes, Sr.

Appellant

Court of Appeals Nos. WD-18-087
WD-18-088

Trial Court Nos. 2018CR0105
2018CR0351

**DECISION AND JUDGMENT**

Decided: March 20, 2020

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} In this consolidated appeal, appellant, Samuel Haynes, Sr., appeals the

judgment of the Wood County Court of Common Pleas, sentencing him to four years in

prison after a jury found him guilty of two counts of corrupting another with drugs and

one count of aggravated possession of drugs. Because we find that appellant's convictions for corrupting another with drugs were not supported by sufficient evidence, we reverse the trial court's judgment in case No. 2018CR0105. Finding no error in the trial court's imposition of costs, we affirm the court's judgment in case No. 2018CR0351.

## A. Facts and Procedural Background

{¶ 2} On April 5, 2018, appellant was indicted in case No. 2018CR0105 on two counts of corrupting another with drugs in violation of R.C. 2925.02(A)(2) and (C)(1), felonies of the second degree. The first count stemmed from an overdose that occurred on December 15, 2017. On that date, K.D. overdosed after using heroin that she purchased from appellant's dealer in Toledo. The second count stemmed from an overdose that occurred on December 29, 2017. On that date, M.W. overdosed after using heroin that he acquired from appellant's dealer in Toledo.

{¶ 3} On April 6, 2018, appellant appeared before the trial court and entered pleas of not guilty to the aforementioned charges. Thereafter, the matter proceeded to discovery.

{¶ 4} On September 20, 2018, an additional indictment was filed in case No. 2018CR0351 on one count of aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(a), a felony of the fifth degree. Appellant pled not guilty to the charge, and discovery continued in both cases.

{¶ 5} On October 3, 2018, the state filed a motion to join the two indictments for trial. Appellant filed his memorandum in opposition to the state's motion on October 10,

2.

2018, arguing that the joinder of the cases would be unfairly prejudicial. On October 18, 2018, the trial court granted the state's motion and joined the cases for trial.

{¶ 6} The matter then proceeded to a two-day jury trial on October 30, 2018.[1] Over the course of the trial, the state called several witnesses, including M.W. and K.D. Appellant did not call any witnesses.

{¶ 7} On the first day of trial, M.W., who was 34 years old at the time of trial, testified that he began using Fentanyl at the age of 17. Early on, M.W. used Fentanyl three times per week, eventually leading to his becoming addicted to the drug. M.W. first realized that he was addicted to Fentanyl in 2010, when he started to notice that he would become sick when he was not using Fentanyl. At that time, M.W. checked himself into an inpatient substance abuse treatment program located in Maumee, Lucas County, Ohio. Although the program helped M.W. to stop using drugs for a "couple months," he ultimately relapsed on Fentanyl and heroin. M.W. stated that he sought treatment for his addiction on at least three additional occasions. On one such occasion, he entered into a substance abuse program at Behavioral Connections in Bowling Green, Wood County, Ohio. It was during his treatment at Behavioral Connections, in October 2017, that M.W. first met appellant.

---

[1] On the eve of trial, the state filed a motion to amend the indictment in case No. 2018CR0105. In its motion, which was granted by the trial court, the state sought to amend the indictment to reflect two charges of corrupting another with drugs in violation of R.C. 2925.02(A)(3) instead of R.C. 2925.02(A)(2).

3.

{¶ 8} Regarding his involvement with appellant, M.W. described appellant as a "friend" and indicated that they would talk during treatment sessions at Behavioral Connections. The course of treatment M.W. received at Behavioral Connections included Suboxone, an opiate that is used to provide relief from opiate withdrawal symptoms. At that time, M.W. was trying to "do a taper off" of Suboxone, and he testified that he had not used heroin since September 2017. However, M.W. acknowledged that he discussed the possibility of trading Suboxone for heroin with appellant, and he later indicated that he relapsed on heroin sometime in November 2017. When asked whether appellant helped him relapse, M.W. responded in the negative, although M.W. did concede that "the only heroin that I was using was the heroin that me and [appellant] were getting." On cross-examination, M.W. testified that he was the one who took the initiative to travel to Toledo to acquire heroin. He went on to state that he resumed his use of heroin in order to wean himself off of Suboxone and to avoid the withdrawal symptoms that are associated with the cessation of Suboxone use.

{¶ 9} In December 2017, M.W. and appellant traveled to Toledo in appellant's van on "more than three" occasions in order to acquire heroin. M.W. provided appellant with Suboxone, which appellant then traded in toward the purchase of heroin from appellant's drug dealer. Thereafter, M.W. and appellant split the heroin evenly, at times using the heroin together. M.W. testified that he did not know whether appellant ever paid him anything for his share of the heroin.

4.

{¶ 10} On the afternoon of December 29, 2017, appellant and M.W. drove to Toledo together to trade Suboxone for heroin from appellant's drug dealer. Upon their arrival, the dealer approached M.W. while he was seated in the passenger seat of appellant's vehicle. M.W. then gave the dealer some of his Suboxone in exchange for heroin.

{¶ 11} After the drug transaction, appellant and M.W. left Toledo and headed back toward Bowling Green. While appellant was driving, M.W. ingested some of the heroin, which he described as having "a lot of Fentanyl in it." M.W. then blacked out, and recalled regaining consciousness once he was back in Bowling Green. M.W. instructed appellant to drop him off at his apartment, where he used more of the heroin, leading to an overdose. Appellant was not with M.W. at the time of his overdose. M.W. was eventually given two doses of Narcan, an opiate blocker, and was resuscitated by medical personnel.

{¶ 12} On the second day of trial, K.D. testified that she, like M.W., met appellant while undergoing substance abuse treatment at Behavioral Connections. Prior to entering treatment, K.D. had used drugs for more than seven years. K.D.'s treatment program included Suboxone, which K.D. was taking in order to wean herself from heroin. During her time at Behavioral Connections, K.D. and appellant discussed their history of drug use and the idea of using heroin again.

{¶ 13} According to K.D.'s testimony, appellant informed her that he was still using heroin while undergoing treatment. Appellant explained to K.D. that he knew a

5.

heroin dealer in Toledo and thus it was no problem for him to acquire heroin. K.D. could not remember who initiated the conversation about using heroin. Nonetheless, she agreed to travel to Toledo with appellant to purchase heroin.

{¶ 14} Thereafter, K.D. and appellant visited Toledo "over 40 times." According to K.D., she was responsible for purchasing appellant's fuel for the trips, and was also required to split the heroin evenly with appellant. In most instances, K.D. purchased the heroin with cash. Generally, appellant and K.D. would purchase the heroin, find a place to park, and use the heroin immediately. On one such occasion, on December 15, 2017, K.D. overdosed after purchasing heroin from appellant's dealer. K.D. testified that she overdosed at her home, and she indicated that appellant was not present at the time of her overdose.

{¶ 15} Eventually, K.D. was terminated from the substance abuse program at Behavioral Connections due to her relapse with heroin.

{¶ 16} On cross-examination, K.D. clarified that appellant never injected her with heroin. She also acknowledged that she was using heroin for months prior to her December 15 overdose. K.D. went on to testify that she could have acquired heroin without appellant's assistance, but it was more convenient for her to use appellant's dealer because she could purchase smaller quantities from appellant's dealer.

{¶ 17} At the close of the state's evidence, appellant moved the trial court for an acquittal under Crim.R. 29, arguing that there was no evidence introduced to establish that he furnished heroin to K.D. and M.W. as required to support a conviction for

6.

corrupting another with drugs. As to the aggravated possession charge, appellant contended that the state failed to introduce evidence to demonstrate that he was the individual in possession of a duffle bag containing heroin, which was seized from appellant's van by the police.

{¶ 18} The state responded by arguing that it did not have to prove that appellant "was the one who furnished the drugs." Rather, according to the state, appellant's participation in obtaining heroin for K.D. and M.W. by driving them to his dealer in Toledo was sufficient to support convictions for corrupting another with drugs. Further, the state contended that the aggravated possession charge was supported by evidence that appellant was the sole occupant of the van at the time of the seizure of heroin, and that he had sole dominion and control over the vehicle. Thus, the state argued that the evidence established that appellant was the individual in possession of the duffle bag located inside the van.

{¶ 19} Ultimately, the trial court agreed with the state and summarily denied appellant's Crim.R. 29 motion. Thereafter, closing arguments were presented, the jury was instructed, and the jury began its deliberations. Eventually, the jury returned with guilty verdicts as to the three charges contained in the indictments, as amended.

{¶ 20} The matter proceeded immediately to sentencing, at which time the trial court ordered appellant to serve two years in prison on each of the charges for corrupting another with drugs and 11 months in prison for aggravated possession of drugs. The

7.

court directed the two-year sentences to be served consecutively to one another, but concurrent to the 11-month sentence, for a total prison sentence of four years.

{¶ 21} On December 7, 2018, appellant filed his timely notice of appeal in case Nos. 2018CR0105 and 2018CR0351. Pursuant to appellant's request, we consolidated the appeals on December 17, 2018.

## B. Assignments of Error

{¶ 22} On appeal, appellant assigns the following errors for our review:

I. The trial court erred in denying Appellant's Crim.R. 29 motion.

II. The jury's verdict was against the manifest weight of the evidence presented at trial.

III. The trial court committed error to the prejudice of Appellant by imposing the costs of prosecution without consideration of Appellant's present or future ability to pay.

## II. Analysis

## A. Sufficiency and Manifest Weight

{¶ 23} In appellant's first assignment of error, he argues that his convictions for corrupting another with drugs were not supported by sufficient evidence.[2] Therefore, appellant contends that the trial court erred in denying his Crim.R. 29 motion for

[2] Appellant does not challenge the sufficiency of the state's evidence regarding his aggravated possession conviction in case No. 2018CR0351. Rather, appellant's arguments regarding his aggravated possession conviction pertain only to the court imposition of costs as set forth in his third assignment of error.

8.

acquittal. Additionally, appellant asserts in his second assignment of error that his convictions for corrupting another with drugs were contrary to the manifest weight of the evidence. Because appellant's first two assignments of error are interrelated, we will address them simultaneously.

{¶ 24} A motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 25} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 26} When reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *Id.* at 387. That is, we review the entire record, weigh the evidence

9.

and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 27} Here, appellant was convicted of two counts of corrupting another with drugs in violation of R.C. 2925.02(A)(3), which provides:

> (A) No person shall knowingly do any of the following:
>
> * * *
>
> (3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent.

In support of his sufficiency and manifest weight arguments, appellant contends that the state failed to introduce evidence demonstrating that he administered, furnished, caused, or induced M.W. or K.D. to use heroin. Additionally, appellant asserts that the state did not establish that he purposely caused physical harm to M.W. or K.D. or caused them to become drug dependent. We will address these arguments in reverse order.

10.

{¶ 28} As to the purpose argument, we note that the statutory section identified in the original indictment, R.C. 2925.02(A)(2), does contain a purpose element.[3] However, R.C. 2925.02(A)(3) contains no such element. In their briefs to this court, the parties focus their arguments around R.C. 2925.02(A)(2). Our review of the record makes it clear that appellant was convicted of corrupting another with drugs under R.C. 2925.02(A)(3), not R.C. 2925.02(A)(2). Because R.C. 2925.02(A)(3) does not contain a purpose element, the state was not required to prove that appellant acted with purpose in causing serious physical harm to M.W. or K.D.

{¶ 29} Next, we turn to appellant's argument that the state failed to introduce sufficient evidence to establish that he administered or furnished heroin to M.W. or K.D., or induced or caused them to use heroin. At the outset, we note that only the term "administer" is defined within the Revised Code. Under R.C. 3719.01(A), "administer" is defined as "the direct application of a drug, whether by injection, inhalation, ingestion, or any other means to a person or an animal." There is no evidence in this case to support the conclusion that appellant directly applied the heroin for M.W. or K.D. Rather, the

---

[3] R.C. 2925.02(A)(2) provides,

> (A) No person shall knowingly do any of the following:
>
> * * *
>
> (2) By any means, administer or furnish to another or induce or cause another to use a controlled substance *with purpose* to cause serious physical harm to the other person, or *with purpose* to cause the other person to become drug dependent. (Emphasis added.)

11.

testimony provided at trial established that M.W. overdosed at his apartment and K.D. overdosed at her home. Appellant was not present at the time of the overdoses.

{¶ 30} The term "furnish" is not defined in the Revised Code. "Black's Law Dictionary * * * defines 'furnish' to mean '[t]o supply, provide, or equip, for accomplishment of a particular purpose.'" *State v. Schwab*, 4th Dist. Athens No. 12CA39, 2014-Ohio-336, ¶ 9. With this definition in mind, there is no evidence that appellant furnished the drugs to M.W. and K.D. Indeed, the testimony adduced at trial establishes that appellant transported M.W. and K.D. to Toledo to meet with his drug dealer. M.W. and K.D. conducted the drug transactions on their own, and thereafter split the heroin with appellant as a form of compensation for his driving them to Toledo. Thus, the drugs did not come from appellant, nor were they within appellant's dominion or control prior to being purchased by M.W. and K.D.

{¶ 31} Like "furnish," the term "induce" is not defined in the Revised Code. In *State v. Marbury*, 8th Dist. Cuyahoga No. 52848, 1987 WL 19252 (Oct. 29, 1987), a case involving a charge of obstructing justice under R.C. 2921.32, the Eighth District defined "induce" as follows:

> Because the word "induce" is not defined in the Revised Code, we are obliged by R.C. 1.42 to consider the common meaning:
>
> "[T]o move and lead (as by persuasion or influence) * * *: prevail upon * * *3a: to bring on or bring about." Webster's Third New International Dictionary (1986) 1154.

12.

Black's Law Dictionary (5 Ed.1979) 697, provides a consistent

definition:

"To bring on or about; to affect, cause, to influence to an act or

course of conduct, lead by persuasion or reasoning, incite by motives,

prevail on."

*Id.* at *3.

{¶ 32} Applying the foregoing definition to the facts in the case at bar, we find a dearth of evidence to establish that appellant induced M.W. and K.D. to use drugs. As to M.W., the record reveals that M.W. resumed his use of heroin in an effort to wean himself off of Suboxone and avoid the severe withdrawal effects associated with the cessation of Suboxone use. M.W. was specifically asked about appellant's involvement in his relapse on heroin, and he responded that appellant did not help him relapse. M.W. later testified that he was the one who took the initiative to travel to Toledo to acquire heroin. Taken together, M.W.'s testimony does not support the state's theory that appellant was preying upon M.W. and persuaded him to relapse on heroin. To the contrary, it is evident from our review of the record that M.W. wished to resume his heroin use, and used appellant's connections in Toledo to do so.

{¶ 33} Regarding K.D., the record reveals that K.D. and appellant occasionally discussed their history of drug use and the idea of using heroin again while they were both patients at Behavorial Connections. While she testified that appellant informed her that he was still using heroin while undergoing treatment, and that he knew a heroin

13.

dealer in Toledo and thus it was no problem for him to acquire heroin, K.D. could not remember who initiated the conversation about using heroin. Further, the state introduced no evidence to establish that appellant exerted any influence over K.D. or attempted to persuade her to resume her use of heroin during these discussions. Indeed, K.D. acknowledged that she was using heroin for months prior to her December 15 overdose. As to whether appellant persuaded her to relapse on heroin or influence her in that regard, K.D. testified that she used appellant's dealer simply because she could purchase smaller quantities of heroin from appellant's dealer. Moreover, K.D. conceded the fact that she could have acquired heroin without appellant's assistance; she used appellant's dealer out of mere convenience. Ultimately, K.D.'s testimony establishes that she planned on using heroin with or without appellant. Thus, we find that appellant did not "induce" K.D. to use heroin.

{¶ 34} In addition to the foregoing, we further find that the evidence presented by the state does not establish that appellant caused M.W. or K.D. to use heroin. As already noted, M.W. testified that appellant did not help him relapse. Further, while K.D. testified that appellant's dealer provided a convenient means of acquiring small quantities of heroin, she did not testify that appellant's dealer was the exclusive means of acquiring heroin.

{¶ 35} Upon a thorough examination of the record before us, we conclude that the state's evidence, when viewed in a light most favorable to the state, does not establish that appellant administered or furnished heroin to M.W. or K.D. We further find that the

evidence does not prove that appellant induced or caused M.W. or K.D. to use heroin. Consequently, we find that appellant's convictions for corrupting another with drugs under R.C. 2925.02(A)(3) are not supported by sufficient evidence. Because the state's evidence was insufficient to support the charges of corrupting another with drugs, we find that the trial court erred in denying appellant's Crim.R. 29 motion.

{¶ 36} Accordingly, appellant's first assignment of error is well-taken. Our resolution of appellant's first assignment of error in his favor renders appellant's second assignment of error moot, and we do not address it.

## B. Costs

{¶ 37} In his third assignment of error, appellant argues that the trial court erred by imposing the costs of prosecution without consideration of appellant's present or future ability to pay. At the outset, we note that the trial court's imposition of costs in case No. 2018CR0105 cannot stand, as we have concluded that the convictions obtained in that case were not supported by sufficient evidence. As to the costs imposed in case No. 2018CR0351, our standard of review on this issue is whether the imposition of costs was contrary to law. R.C. 2953.08(A)(4) and (G)(2)(b); *State v. Farless*, 6th Dist. Lucas Nos. L-15-1060 and L-15-1061, 2016-Ohio-1571, ¶ 4, citing *State v. Collins*, 2015-Ohio-3710, 41 N.E.3d 899, ¶ 30 (12th Dist.) ("An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law.").

15.

**{¶ 38}** At sentencing, the trial court imposed costs by stating, "Costs of this matter are going to be assessed to the Defendant." In its sentencing entry, the trial court clarified that it was only ordering appellant to pay the costs of prosecution, stating in relevant part: "The Defendant shall pay the outstanding costs of this prosecution. Judgment granted for costs and execution awarded to Wood County."

**{¶ 39}** On appeal, appellant challenges the trial court's imposition of costs on the basis that the trial court did not consider his present or future ability to pay costs. Appellant confusingly cites two types of costs in his brief; costs of prosecution and costs of confinement. However, as noted above, the trial court only directed appellant to pay the costs of prosecution.

**{¶ 40}** Concerning costs of prosecution, R.C. 2947.23(A)(1)(a) provides that "[i]n all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution * * * and render judgment against the defendant for such costs." We have previously held that trial courts are obligated to impose the costs of prosecution irrespective of a defendant's ability to pay such costs. *See State v. Trimpe*, 6th Dist. Wood No. WD-18-048, 2019-Ohio-3017, ¶ 29; *State v. Dotson*, 6th Dist. Wood No. WD-15-060, 2016-Ohio-8085, ¶ 23; *State v. Tucker*, 6th Dist. Wood No. WD-16-063, 2018-Ohio-1869, ¶ 37; *State v. Hughes*, 6th Dist. Wood No. WD-16-056, 2018-Ohio-1237, ¶ 64.

**{¶ 41}** Because the court did not impose costs of confinement in case No. 2018CR0351, and because it was obligated to impose the costs of prosecution

irrespective of appellant's ability to pay, we find that costs of prosecution were properly imposed in case No. 2018CR0351. Therefore, appellant's third assignment of error is not well-taken with respect to the costs imposed in case No. 2018CR0351.

### {¶ 42} Conclusion

{¶ 43} In light of the foregoing, the judgment of the Wood County Court of Common Pleas is reversed, in part, and affirmed, in part. Appellant's convictions for corrupting another with drugs in case No. 2018CR0105 are not supported by sufficient evidence, and are vacated. Therefore, appellant may not be retried on those charges, and they are hereby dismissed. The trial court's imposition of costs in case No. 2018CR0351 is affirmed. The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed, in part,
and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.              _____
                                              JUDGE
Christine E. Mayle, J.            

Gene A. Zmuda, P.J.           _____
CONCUR.                                       JUDGE

_____
                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.