[Cite as *State v. Robinson*, **2020-Ohio-6978.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                        Court of Appeals No. S-20-013

     Appellee                                      Trial Court No. 18 CR 909

v.

Michael W. Robinson                          **DECISION AND JUDGMENT**

     Appellant                                    Decided:  December 30, 2020

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Hotz, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Michael Robinson, appeals the judgment of the Sandusky County

Court of Common Pleas, sentencing him to three years in prison after a jury found him

guilty of one count of attempted grand theft and one count of breaking and entering.

Because we find that appellant's convictions were supported by sufficient evidence and

were not against the manifest weight of the evidence, and in light of our determination that the trial court's imposition of costs was not contrary to law, we affirm.

## A. Facts and Procedural Background

{¶ 2} On December 18, 2019, appellant was indicted on one count of attempted grand theft in violation of R.C. 2913.02(A)(1) and (B)(4), and R.C. 2923.02(A), a felony of the second degree, and one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree. The charges were based upon an incident in which appellant was found alone inside a federally licensed firearms dealer, Associated Buyers, early in the morning on June 2, 2018.

{¶ 3} On September 25, 2018, appellant appeared before the trial court for arraignment, at which he entered a plea of not guilty to the aforementioned charges. Thereafter, the parties conducted pretrial motion practice and discovery. On December 19, 2019, a two-day jury trial commenced.

{¶ 4} During its case-in-chief, the state called four witnesses. The state's first witness was officer Samantha Lewis of the Fremont Police Department. On June 2, 2018, at 1:15 a.m., Lewis, along with other officers, responded to Associated Buyers in Fremont, Sandusky County, after being alerted that the alarm was triggered at that address. Lewis described Associated Buyers as a "small little store" that sells "a whole bunch of different things, like firearms to things like pillows, it's an interesting little shop."

2.

{¶ 5} Upon arrival at Associated Buyers, Lewis and other law enforcement officers proceeded to check to see whether any of the doors and windows were unlocked or broken. Lewis testified that her check of the premises revealed that "there was an open window which had been broken open." Lewis stated that she stood at the window and listened for noise emanating from inside Associated Buyers. After a few moments, Lewis heard the sound of someone "scuffling around inside, at which point it was decided that we would make contact with [officer] Bush to bring in K-9 Woody as well as the key holder to get into the building under the assumption that there might be somebody inside that shouldn't be." Lewis testified that Associated Buyers was not open for business at the time.

{¶ 6} Thereafter, the officers surrounded the premises in order to prevent the suspected intruder from escaping unnoticed. After further scanning of the area, Lewis noticed a muddy shoeprint on the north side of an alley adjacent to the building, which she photographed. Matching muddy shoeprints were subsequently discovered inside Associated Buyers and around the exterior area near the broken window.

{¶ 7} As its second witness, the state called one of the owners of Associated Buyers, Edward Schultz. At 1:30 a.m. on June 2, 2018, Schultz was awoken when he received a phone call notifying him that the alarm at Associated Buyers had been triggered. Schultz testified that Associated Buyers was a federally licensed firearm dealer at the time of the incident, and indicated that the store was closed to the public at the time the alarm was triggered. Schultz went on to state that he did not give anyone

3.

permission to be in the store at the time of the incident, and thus nobody should have been inside the store.

{¶ 8} Later in his testimony, Schultz explained that he was the one who closed Associated Buyers at the end of business hours on June 1, 2018. According to Schultz, everything was in order and the store was secured prior to his departure from the store on June 1. Schultz testified that none of the store's windows were broken and he did not track the muddy shoeprints into the store.

{¶ 9} Schultz noted that muddy shoeprints were discovered around the area of Associated Buyers where the firearms are located. Further, Schultz examined photographs of the store taken by law enforcement and noted that two rifles had been repositioned from their ordinary location. According to Schultz, the rifles "weren't there when I closed the business." Schultz testified that one of the rifles, a Ruger 10/22, was operable.

{¶ 10} As he was examining the photographs of the interior of Associated Buyers, Schultz noticed a set of pliers sitting atop the locked display case where the store's handguns are stored. Schultz explained that he had never seen those particular pliers before. Further, Schultz observed what appeared to him as "marks, like, pry marks" on the back of the display case, which he had not seen prior to the incident, and he also noticed that the sliding glass panel on the back of the display was off its track.

{¶ 11} At the conclusion of Schultz's testimony, the state called officer Brian Kingsborough of the Fremont Police Department for its third witness. During his

4.

testimony, Kingsborough stated that he, along with other officers, made entry into Associated Buyers and discovered appellant alone inside the building. Kingsborough proceeded to take appellant into custody. Kingsborough testified that appellant was in possession of an empty duffle bag large enough to contain a handgun, and he was laying on the bottom of a display shelf in the area where the firearms were located when he was discovered by police.

{¶ 12} As its fourth and final witness, the state called detective Clayton Holskey of the Fremont Police Department. On June 2, 2018, Holskey received a call from his sergeant alerting him to the alarm call at Associated Buyers. Holskey responded to the scene and conducted an investigation.

{¶ 13} As part of his investigation, Holskey noticed what he described as "drips of what appear[ed] to be blood from the broken window down onto the floor." More drops of blood were found inside Associated Buyers. Holskey collected a sample of the blood and had it compared to blood that was drawn from appellant pursuant to a search warrant. Additionally, Holskey swabbed skin cells from the pliers that were lying on a shelf in the area in which appellant was located. The blood sample and the skin cell sample were sent to the Bureau of Criminal Investigations for testing. Ultimately, it was determined that both samples matched appellant's DNA.

{¶ 14} During his testimony, Holskey stated that he suspected that the pliers were used by appellant to "pry open the doors on the handgun display case." Holskey compared his measurements of the width of the pliers against the marks made on the

5.

wood of the handgun display case, determined that the sizes matched up, and thus concluded that the pliers were used in an effort to pry open the display case.

{¶ 15} Subsequently, Holskey executed a search warrant relating to appellant's mobile phone. During his examination of the phone, Holskey found a Facebook Messenger thread between appellant and his friend, Don, that took place starting at 11:07 p.m. on the evening prior to the incident at Associated Buyers. During the message thread, appellant wrote to Don, "Need an all by." Don replied, "You were here," and appellant responded that he was "[a]bout to do something bad." Don then encouraged appellant to "get it, Bro." Appellant replied, "You got me," and Don said "yep, we playing cards."

{¶ 16} At the close of the state's case-in-chief, appellant moved for an acquittal under Crim.R. 29, arguing that the state's evidence failed to establish that appellant intended to steal a firearm from Associated Buyers. The trial court summarily denied appellant's Crim.R. 29 motion, and the matter proceeded to appellant's case-in-chief.

{¶ 17} Appellant took the stand as the only witness during his case-in-chief. For his part, appellant testified that he suffers from post-traumatic stress disorder following his military service. Appellant stated that he experiences blackouts due to his condition, and insisted that he could not recall the events that transpired on the morning of June 2, 2018. Appellant went on to deny that the pliers found inside Associated Buyers belonged to him. When asked about the bag he was carrying, appellant explained that he is a blacksmith and was planning to repair a knife for Don.

6.

{¶ 18} Regarding his Facebook Messenger conversation with Don, appellant testified: "From what I – from earlier in that night before I went to sleep at home, I texted Don about going to a card game, and it's an all buy in, not a – what they were referring to, because I didn't have enough money on me at the time to even buy in, which you had to buy into the game and get everything squared away." On cross-examination, the state asked appellant about his message to Don indicating that he was "[a]bout to do something bad." Appellant responded that "usually when you do something bad, that means you're going to clean up at the card game."

{¶ 19} At the conclusion of his testimony, appellant rested and renewed his Crim.R. 29 motion, which was again denied by the trial court. Thereafter, the parties provided their closing arguments and the trial court instructed the jury. Following its deliberations, the jury returned with a guilty verdict as to the charges of attempted grand theft and breaking and entering. The trial court ordered the preparation of a presentence investigation report, and the matter was continued for sentencing.

{¶ 20} At a sentencing hearing held on February 18, 2020, the trial court heard statements from the state, appellant's counsel, and appellant. Thereafter, the trial court addressed appellant and informed him that it considered the principles and purposes of sentencing under R.C. 2929.11, as well as the seriousness and recidivism factors under R.C. 2929.12. The court ultimately ordered appellant to serve three years in prison for attempted grand theft and one year in prison for breaking and entering, to be served concurrently. The court went on to order appellant to pay restitution and "pay the court

7.

costs," and followed up in its sentencing entry to indicate that appellant "is ordered to pay all court costs * * *." Appellant's timely notice of appeal followed.

## B. Assignments of Error

{¶ 21} On appeal, appellant assigns the following errors for our review:

Assignment of Error One: Appellant's convictions are not supported by sufficient evidence in violation of the Due Process Clauses of the U.S. Constitution and the Ohio Constitution, and are against the manifest weight of the evidence.

Assignment of Error Two: The imposition of "costs" is contrary to law.

## II. Analysis

## A. Sufficiency and Manifest Weight

{¶ 22} In his first assignment of error, appellant argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 23} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 24} When reviewing a manifest weight claim, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, we review

8.

the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 25} In the present case, appellant was convicted of attempted grand theft and breaking and entering. The theft statute, R.C. 2913.02, provides, in relevant part:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

* * *

(B)(1) Whoever violates this section is guilty of theft.

* * *

(4) If the property stolen is a firearm or dangerous ordnance, a violation of this section is grand theft. Except as otherwise provided in this division, grand theft when the property stolen is a firearm or dangerous ordnance is a felony of the third degree, and there is a presumption in favor of the court imposing a prison term for the offense. If the firearm or

9.

dangerous ordnance was stolen from a federally licensed firearms dealer, grand theft when the property stolen is a firearm or dangerous ordnance is a felony of the first degree. The offender shall serve a prison term imposed for grand theft when the property stolen is a firearm or dangerous ordnance consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

{¶ 26} On appeal, appellant argues that the state's evidence was insufficient to establish that he attempted to steal an "operable" firearm, or that Associated Buyers is a federally licensed firearms dealer.

{¶ 27} R.C. 2913.01(EE) provides that the word "firearm" used in Chapter 2913 has the same meaning as in R.C. 2923.11. Under R.C. 2923.11(B)(1), a firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Further, R.C. 2923.11(B)(2) provides that circumstantial evidence including "the representations and actions of the individual exercising control over the firearm" is sufficient to determine whether the firearm is operable.

{¶ 28} "In determining whether a firearm is operable, the trier of fact examines the totality of the circumstances." *State v. Johnson*, 9th Dist. Lorain No. 14CA010688, 2016-Ohio-872, ¶ 8, citing *State v. Hughes*, 9th Dist. Summit No. 27061, 2014-Ohio-4039, ¶ 21, and *Thompkins*, *supra*, 78 Ohio St.3d at 385, 678 N.E.2d 541 ("In determining * * *

10.

whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime * * *.").

{¶ 29} At trial, the state argued that the firearms in the display case and the "rifles, including the Ruger, which were moved, were the items appellant intended to steal." Schultz testified at trial that two rifles, including a Ruger 10/22 that was capable of being taken apart and stored in a bag, had been repositioned from their ordinary location. Schultz explained that the rifles "weren't there when I closed the business," and he specifically stated that the Ruger 10/22 rifle was operable.

{¶ 30} Testimony from a gun shop owner that a firearm is operable is clearly sufficient to establish operability under R.C. 2923.11(B). *See State v. Stodgel*, 12th Dist. Fayette No. CA2012-04-010, 2013-Ohio-1109, ¶ 41, citing *State v. Hughes*, 3rd Dist. Allen No. 1-94-81, 1995 WL 385512 (June 29, 1995) ("The testimony of a gun shop owner that the firearms stolen from his gun shop were capable of firing a projectile by the action of an explosive or combustible propellant was sufficient to show that the guns were operable even though they were not test fired."); *State v. Ross*, 4th Dist. Ross No. 94 CA 2019, 1994 WL 718339 (Dec. 21, 1994) (finding sufficient evidence of operability where the gun shop owner testified that he received the firearm from the wholesaler in assembled condition and noticed nothing wrong with the firearm). Given Schultz's testimony that the Ruger 10/22 rifle was operable, we reject appellant's contention that the state failed to introduce sufficient evidence as to the operability of the firearm at issue

11.

in this case. Moreover, appellant does not challenge the state's evidence regarding the remaining elements of attempted grand theft. Therefore, we find no merit to appellant's sufficiency argument concerning the charge of attempted grand theft.

{¶ 31} As to the breaking and entering charge, appellant was convicted under R.C. 2911.13(A), which provides: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."

{¶ 32} Appellant acknowledges, as he did at trial, that he was found inside Associated Buyers on the morning of June 2, 2018. The evidence of a broken window and his blood around the area of the broken glass demonstrates that he forced his way into the store. Further, Schultz testified that nobody had permission to be in the store at the time. Nonetheless, appellant argues that the state's evidence was insufficient to demonstrate that he broke into Associated Buyers with the purpose to commit a theft offense. In support, appellant relies upon his testimony that he suffers from post-traumatic stress disorder and blackouts, and could not recall anything that happened prior to or during his time inside Associated Buyers.

{¶ 33} Under R.C. 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

12.

{¶ 34} Here, the state introduced evidence that established that appellant, after entering into Associated Buyers through a window he had broken, proceeded to the area of the store where the firearms were kept, removed two rifles from their shelf, and attempted to pry open the handgun display case. Two hours prior to the break-in, appellant messaged Don and told him that he needed an "all by," which in the context of the conversation seemed to be a reference to an alibi given appellant's follow up message indicating that he was getting ready to "do something bad."

{¶ 35} The foregoing evidence, viewed in a light most favorable to the prosecution, is sufficient to prove that appellant's specific intention in breaking into Associated Buyers was to steal firearms. This is true regardless of the veracity of appellant's claim that he cannot remember the goings-on at Associated Buyers because he blacked out.

{¶ 36} Appellant's blackout defense is an affirmative defense that would allow him to avoid liability even if the state produced sufficient evidence to support a conviction. *State v. Ireland*, 155 Ohio St.3d 287, 2018-Ohio-4494, 121 N.E.3d 285, ¶ 26. "A sufficiency-of-the-evidence review does not apply to affirmative defenses because such a review does not consider the strength of defense evidence." *State v. McBride*, 5th Dist. Stark No. 2019CA00038, 2020-Ohio-559, ¶ 35, citing *State v. Oates*, 2013-Ohio-2609, 993 N.E.2d 846, ¶ 10 (3d Dist.), and *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. Therefore, appellant's blackout defense is immaterial to whether the state introduced sufficient evidence to support appellant's breaking and entering

13.

conviction. Because we find that the state did introduce sufficient evidence to support the conviction, we reject appellant's sufficiency argument.

{¶ 37} Furthermore, in light of the evidence introduced by the state going to all of the elements of the offenses of attempted grand theft and breaking and entering, we do not find that appellant's blackout defense and his explanation of the statements he made to Don over Facebook Messenger constitute evidence that bring this case into the category of the exceptional case in which the evidence weighs heavily against the conviction. Consequently, we conclude that appellant's convictions were not against the manifest weight of the evidence.

{¶ 38} Accordingly, we find appellant's first assignment of error not well-taken.

### B. Imposition of Costs

{¶ 39} In his second assignment of error, appellant argues that the trial court erred in its imposition of costs.

{¶ 40} "An appellate court may not modify a financial sanction unless it finds by clear and convincing evidence that it is not supported by the record or is contrary to law." *State v. Farless*, 6th Dist. Lucas Nos. L-15-1060 and L-15-1061, 2016-Ohio-1571, ¶ 4, citing *State v. Collins*, 2015-Ohio-3710, 41 N.E.3d 899, ¶ 30 (12th Dist.). Therefore, "our standard of review on this issue is whether the imposition of costs was contrary to law." *State v. Haynes*, 2020-Ohio-1049, 152 N.E.3d 1217, ¶ 37 (6th Dist.), citing R.C. 2953.08(A)(4) and (G)(2)(b).

14.

{¶ 41} At sentencing, the trial court simply ordered appellant to "pay the court costs." Likewise, in its sentencing entry, the trial court indicated that appellant "is ordered to pay all court costs * * *." Appellant notes that the trial court failed to notify him of precisely what costs it was ordering him to pay, and challenges the trial court's general imposition of costs that was unaccompanied by a finding that he is able to pay such costs.

{¶ 42} In *State v. Jones*, 6th Dist. Sandusky No. S-18-036, 2019-Ohio-2646, we explained that "R.C. 2929.28 defines 'court costs' as costs imposed pursuant to R.C. 2947.23, i.e., costs of prosecution." *Id.* at ¶ 15. R.C. 2947.23(A)(1)(a) provides that "[i]n all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution * * * and render judgment against the defendant for such costs." We have previously held that trial courts are obligated to impose the costs of prosecution irrespective of a defendant's ability to pay such costs. *See State v. Trimpe*, 6th Dist. Wood No. WD-18-048, 2019-Ohio-3017, ¶ 29; *State v. Dotson*, 6th Dist. Wood No. WD-15-060, 2016-Ohio-8085, ¶ 23; *State v. Tucker*, 6th Dist. Wood No. WD-16-063, 2018-Ohio-1869, ¶ 37; *State v. Hughes*, 6th Dist. Wood No. WD-16-056, 2018-Ohio-1237, ¶ 64. Thus, we find that the trial court did not err in imposing the costs of prosecution without finding that appellant is able to pay such costs.

{¶ 43} Besides the mandatory costs of prosecution, the trial court did not impose any costs for which it must first determine whether appellant is able to pay. Therefore, contrary to the argument raised by appellant in his brief, the trial court was not required

to make a determination of appellant's ability to pay, and its imposition of costs was not contrary to law.

{¶ 44} Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 45} In light of the foregoing, the judgment of the Sandusky County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                                
_____
JUDGE

Thomas J. Osowik, J.          

Gene A. Zmuda, P.J.          
_____
JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.